OPINION OF THE COURT
William K. Nelson, J.
This is an action by a landlord to recover damages from a *207 tenant who, it is alleged, accidentally leaked toxic waste into the soil causing a diminution in value to the leased property. Plaintiff seeks partial summary judgment on liability, alleging breach of lease in its first cause of action and waste to property in its second cause of action. Defendant filed a cross motion for summary judgment to dismiss both claims. Both parties submitted reply affirmations with supporting memoranda of law.
STATEMENT OF FACTS
On June 30, 1964, defendant Xerox Corporation, as lessee, entered into a lease with the Oceanmere Realty Corporation, as lessor, with respect to certain property located in Blauvelt, New York (Blauvelt property). On December 19, 1973, defendant, again as lessee, entered into a 15-year lease with Ocean-mere’s successor, plaintiff PBN Associates, which replaced the 1964 lease.
From 1970 to 1979, defendant conducted refurbishing and cleaning operations on its photocopying equipment at the Blauvelt property. Sometime during this period, cleaning solvents were accidentally released into the soil surrounding underground solvent storage tanks. The solvent blends contained chemicals of varying concentrations, several of which were toxic.
In December of 1979, defendant ceased utilizing the Blauvelt property for refurbishing its copier equipment and began operating the facility as a warehouse. During this conversion, the in-ground solvent storage tanks were excavated, at which time defendant became aware of the contamination of soil surrounding the tanks. It is conceded that contamination may extend beyond the Blauvelt property line. Upon discovery of the contamination, defendant contacted the New York State Department of Environmental Conservation (NYSDEC) to discuss removal of the tainted soil.
On January 10, 1983, a new 25-year lease was executed between defendant lessee and plaintiff lessor which terminated the 1973 lease. Under the 1983 lease, defendant received permission to erect a new structure on the Blauvelt property to house additional warehousing facilities. Plaintiff, on the other hand, was permitted to finance the expansion.
On August 2, 1984, defendant entered into an order of consent with the NYSDEC, pursuant to which defendant agreed to conduct extensive hydrogeological research to deter *208 mine the extent of the contamination. Presently, negotiations between defendant and the NYSDEC to establish a plan for removal of any contaminated soil are continuing.
On November 3, 1986, plaintiff filed suit, alleging a diminution in value of the Blauvelt property resulting from the contamination of the soil. In addition to damages, plaintiff requests injunctive relief permanently enjoining defendant from further acts of contamination and compelling defendant to cure the contamination within 180 days. In this action, plaintiff seeks partial summary judgment on the issue of liability only. Defendant filed a cross motion for summary judgment to dismiss the complaint.
CPLR 3212 (c)
The first issue this court must decide is whether, under CPLR 3212 (c), a motion for summary judgment can be granted solely on the issue of liability, where there are no factual issues to be resolved other than damages. The intent of CPLR 3212 (c) is "to determine all issues except damages on a motion where * * * it is reasonable to infer that there probably are damages * * * The motion for partial summary judgment * * * covering all issues of fact except damages is available without proof on the motion of the amount of damages.” (Northway Mall Assocs. v Bernlee Realty Corp., 90 AD2d 739 [1982].) Therefore, plaintiff’s motion can be granted, but the court must now determine if it is proper to do so.
COMMON-LAW WASTE
Plaintiff contends that the market value of the Blauvelt property diminished as a result of the contamination of the soil by the defendant. In seeking relief for the alleged damage to this realty, the complaint sets forth a cause of action alleging waste to the Blauvelt property (second cause of action). The waste claim, however, is improperly premised on the assumption that a landlord can recover for any injury to the leased property, regardless of whether or not the landlord’s reversion was damaged. On the contrary, "[i]t is the impingement upon the ultimate estate of the landlord which is the keynote to the definition of waste”. (Rumiche Corp. v Eisenreich, 40 NY2d 174, 179 [1976].) Thus, the issue now, as in any waste claim, is "whether the tenant, at the time the wrongful act was done, caused an injury which then affected the [landlord] as to his reversion”. (Luisi v Richard Lbr. Co., *209 80 NYS2d 536, 539 [City Ct, Kings County 1948], citing Agate v Lowenbein, 57 NY 604, 614 [1874].)
Defendant submitted affidavits supporting its position that any contamination to the Blauvelt property will be remedied prior to the expiration of the tenancy in the year 2008. According to plaintiff, a proposed order on consent between defendant and the NYSDEC requires a remediation period in excess of the duration of the leasehold. In this case, in order to grant partial summary judgment for plaintiff on liability, there must be no material questions of fact regarding injury to the reversion. Here, the very existence of damage to the reversion is in dispute; therefore, plaintiff’s motion must be denied. Likewise, defendant’s motion for summary judgment to dismiss the waste claim would be denied, if there were no other grounds on which to grant the motion.
STATUTE OF LIMITATIONS
Defendant, however, maintains that the waste claim is barred by the three-year Statute of Limitations for injury to property (CPLR 214 [4]) and should be dismissed. This court agrees.
Clearly, waste actions are included under CPLR 214 (4). (35 NY Jur, Limitations and Laches, § 30.) Furthermore, insofar as determining when the cause of action accrued, plaintiff improperly analogizes a waste claim to claims for nuisance and trespass. Nuisance and trespass actions involve injury to the party currently in possession of the land, which affects the use and enjoyment of the property. Since this possessory interest can be injured on a daily basis, the claim continually accrues each day of the wrong, with recovery of monetary damages limited to the three-year period immediately prior to commencement of the action. (Kearney v Atlantic Cement Co., 33 AD2d 848 [1969]; Amax, Inc. v Sohio Indus. Prods. Co., 121 Misc 2d 814 [Sup Ct 1983].)
In cases of waste, on the other hand, a landlord cannot claim a possessory interest in the realty until the tenancy expires or is abandoned. Thus, a claim for waste cannot be categorized as a continuing tort, such as nuisance or trespass, since waste involves only injury to the future possessory interest of the landlord, i.e., the reversion. It is undisputed that the last toxic spillage into the soil occurred during 1979. Following the general rule regarding injury to property rights, therefore, the cause of action accrued "when liability for *210 wrong [arose] even though the injured party may be ignorant of the existence of the wrong or injury” (Schmidt v Merchants Desp. Transp. Co., 270 NY 287, 300 [1936]), which in this case was 1979. Plaintiff knew of the contamination prior to the execution of the current lease. Plaintiff’s complaint was not filed until November 3, 1986 and is time barred. Any additional contaminants released into the soil during the remainder of the tenancy create a new claim for waste, which would accrue, as here, as of the time of injury. Therefore, defendant’s motion for summary judgment on the second cause of action is granted.
BREACH OF LEASE
The first cause of action alleges breaches of several provisions of the 1983 lease. Two provisions require defendant to promptly repair any damage to the leased premises. The breaches allegedly occurred because contamination of the soil exists seven years after its discovery.
Under the circumstances, however, this court believes repairs were commenced as quickly and as safely as could be expected. Upon discovery of the contamination, defendant immediately notified the NYSDEC, and subsequently entered into an order on consent pursuant to which a hydrogeological survey of the land was conducted. Presently, discussions between defendant and the NYSDEC are ongoing to finalize remediation plans for removal of the soil. Of course, though spillage of toxic waste can occur quickly, the removal of contaminated ground soil requires careful planning to ensure proper results. Moreover, in this case, not only has defendant made reasonable attempts to repair, but the lease also expressly precludes liability for any delays under circumstances such as these. Delays due to government restrictions, such as the current agreement with the NYSDEC, are considered "unavoidable” under the lease. Plaintiff maintains that the classification of "unavoidable” is not available, since the adjoining property owner may file a claim against plaintiff or defendant. However, the lease prevents such categorization only when plaintiff or defendant "would be in danger of incurring any * * * liability for failure to perform the required act.” No claims have been filed by the adjoining landowner against plaintiff or defendant. Clearly, speculation as to the possibility of a lawsuit does not fall within this lease provision. Therefore, the two provisions of the lease requiring prompt repair were not breached.
*211 A third provision of the lease allegedly breached required defendant not to "do or permit any act * * * which might impair the value or usefulness of the Demised Premises * * * or which constitutes * * * waste.” Defendant has not committed any acts of waste under the 1983 lease since 1979 was the last time contamination leaked into the soil. As such, impairment of the usefulness of the Blauvelt property has not been established and, as a result, this provision of the lease was not breached.
Finally, according to plaintiff, a warranty clause exists in the 1983 lease, in which defendant covenanted that it had not committed any act, prior to the execution of the lease, which damaged the Blauvelt property. It is plaintiff’s contention that the 1979 contamination constitutes a breach of this provision.
As a first defense, defendant contends the claim is barred under the doctrine of estoppel. Under this theory, a landlord with actual or constructive knowledge of a tenant’s breach of a lease provision is estopped from maintaining a cause of action for the breach if the tenant changed his position to his detriment as a result. (Kalimian v Olson, 130 Misc 2d 861 [Sup Ct, NY County 1986].) Since it is conceded that plaintiff knew of the contamination prior to executing the 1983 lease, though the extent of this knowledge is disputed, defendant need only prove detrimental injury in order to rely on estoppel.
Defendant maintains that the 25-year commitment under the lease constitutes detrimental injury. Defendant overlooks, however, the numerous benefits it receives under the lease. Not only is defendant able to possess the realty for 25 years, and reap whatever profits inure from its utilization of the current facilities, but, defendant can also build an additional structure on the land and enjoy the added profits from the operation of the new facility. In this context, an allegation of detrimental reliance is without merit. Moreover, it is difficult to envision detrimental reliance in an agreement which neither party seeks to terminate.
As a second defense, defendant maintains that the 1983 lease contains a waiver clause which bars the application of the warranty clause. Under this clause, plaintiff allegedly waived any claims against defendant under the 1973 lease. The provision released plaintiff and defendant from all "obligations” under the prior lease. Defendant mistakenly interprets this as a broad waiver clause; rather, the provision’s *212 clear meaning is to release both parties only from lease obligations, such as rent and maintenance, and should not be read in the broad manner defendant suggests. As such, the provision has no application to the issue at bar.
In a similar manner, plaintiffs interpretation of the alleged "warranty clause” is inconsistent with the language’s clear meaning. The clause guaranteed that plaintiff would not be "impeached, charged, claimed against, encumbered, burdened, or suffer any loss or damage.” Clearly, these terms reflect plaintiff’s intention to protect his title from any impairments caused by defendant. Since, in this case, the only impairment of plaintiff’s title could result from waste, and since damage to the reversion under that claim has not been established, plaintiff’s title has not been damaged under this clause. Thus, this court finds no breach of the warranty clause provision.
As in the instant action, "[w]here * * * there is a question as to the construction of a written contract between the parties and the determination of that question may be reached by reference to and a consideration of the plain and unambiguous wording of the contract” (Janos v Peck, 21 AD2d 529, 531 [1st Dept 1964]), summary judgment is an appropriate method of adjudication. Therefore, since neither party has breached a provision of the lease, summary judgment for defendant dismissing the first cause of action is granted.
CONCLUSION
In conclusion, summary judgment based upon alleged damage or lack of damage to the reversion is denied for both parties. However, summary judgment is granted to the defendant on the first cause of action for breach of lease since neither party breached a provision of the lease. Summary judgment is also granted to the defendant on the second cause of action for waste since that cause of action is time barred under the applicable Statute of Limitations. The third cause of action in the complaint is not truly a cause of action. Rather, it is merely a type of remedy sought by the plaintiff. Therefore, plaintiff’s complaint is dismissed in its entirety.