OPINION OF THE COURT
James C. Harberson, J.
facts
The plaintiff entered into a written lease with the defendant *569 for the period July 13, 1998 to July 12, 1999. The plaintiff seeks the refund of the $375 security deposit.
The defendant requests $455.64 for a general cleaning of the apartment done by a local cleaning company. The plaintiff denies such an extensive cleaning was needed in that the apartment was left in better condition than she found it when she moved in on July 13, 1998. The defendant said the extensive cleaning was due to the smoke residue due to the tenant’s heavy smoking.
DECISION
The defendant’s request for the cost to clean the floors, walls, windows, woodwork and carpets must be based on a showing such a cleanup was for conditions beyond ordinary “ ‘wear’ ” and tear during reasonable use of the premises by the tenant. (Taylor v Campbell, 123 App Div 698; Galante v Hathaway Bakeries, 6 AD2d 142 [4th Dept].) The landlord has the burden to prove such cleanup was for conditions caused by other than ordinary wear and tear due to reasonable use of the apartment by the tenant or a violation of the lease terms.
The landlord testified that the basic reason such an extensive cleaning was required was due to the excessive smoking by the tenant’s leaving a smelly residue of tobacco smoke throughout the leasehold on the walls, woodwork, carpets and other surfaces.
The lease provides at paragraph B (2) “Tenant shall use reasonable care to keep the premises in such condition as to prevent health and sanitation problems from arising.” Paragraph B (3) states the $375 “security deposit * * * may be used * * * at the time premises vacated by tenant toward reimbursement * * * for charges for cleaning not performed prior to vacating.”
In PBN Assocs. v Xerox Corp. (136 Misc 2d 205, mod 141 AD2d 807, mod on rearg 176 AD2d 861), the court acknowledged a cause of action for breaking “provisions” of a lease. In this case the court finds the plaintiff had agreed to “use reasonable care to keep the premises in such condition as to prevent health * * * problems from arising” (para B [2]). The court finds that the plaintiff’s conduct of excessive smoking while in the house caused the tobacco smoke residue to collect on various surfaces of the house creating an offensive odor and a potential health risk that may arise to others who may use the premises.
There is no question that the dangers of such a situation to health due to particulate matter on surfaces left by smoke *570 from tobacco have been recognized by the State. (See, Public Health Law art 13-E; legislative findings, L 1989, ch 244, § 1.) Fagan v Axelrod (146 Misc 2d 286) provides an excellent review of article 13-E of the Public Health Law known as the “Clean Indoor Air Act.”
The expression of the State’s concern in this area of public health is found in Public Health Law § 1399-p (2) which allows hotel or motel operators “to implement a smoking policy for rooms rented to guests” and, if such a policy is adopted “shall post a notice * * * as to the availability * * * of rooms in which no smoking is allowed.” Section 1399-q (1) provides that article 13-E does not apply, however, “to private residences.”
The court finds that while article 13-E does not apply to private residences, the landlord could have specifically prohibited smoking in the leased premises as part of the lease contract for the obvious health reasons outlined above. Notwithstanding the failure to specifically prohibit tobacco smoking by the plaintiff in the lease, this omission did not relieve the tenant from the obligation assumed under the lease to use reasonable care to keep the premises in such a condition as “to prevent health * * * problems from arising” (para B [2]). The court finds that the tenant failed to use such “reasonable care” while smoking tobacco to prevent such indoor air pollution from tobacco smoke to occur in violation of this lease term and must reimburse the defendant for the cost to remedy the problems since the tenant failed to do so before leaving.
The defendant is awarded as provided at paragraph 3 of the lease “reimbursement for the charges for cleaning not performed prior to vacating” the house in the amount of $455.64 to remove the tobacco smoke residue on the various surfaces of the house.
In addition the court finds that ordinary wear and tear should not leave a leasehold in a condition that violates the warranty of habitability. When the use of tobacco by a tenant causes such a pervasive coating of tobacco smoke residue on a leasehold’s surfaces, this condition results in more than ordinary wear and tear to the premises because the residue must be removed to make the rooms habitable for the protection of the health of the next tenants — a condition which if it were not corrected would be “detrimental to their life, health or safety” possibly subjecting the landlord to a violation of the warranty of habitability under section 235-b (1) of the Real Property Law.
The plaintiffs petition for refund of the security deposit is denied because the defendant’s counterclaim damages exceed *571 the amount remaining. The defendant is awarded $455.64 for the cost to clean the house of tobacco smoke residue. The plaintiff is entitled to an offset for the $375 security deposit.
The defendant is awarded judgment together with the costs of the counterclaim filing. The plaintiff is denied costs.