OPINION OF THE COURT
David S. Gideon, J.
*207 Plaintiff/claimant herein brings the instant action seeking monetary damages of $5,000 incurred by him, allegedly caused by defendant’s smoking in the adjoining apartment.
The case at bar uniquely presents the next step in establishing what recovery, if any, is available for damages incurred privately, versus publicly, attributable to environmental tobacco smoke (ETS), oftentimes referred to as “secondhand smoke.”
There is no question that the State of New York has specifically recognized the human health dangers inherent in ETS when article 13-E of the Public Health Law was enacted by the New York State Legislature in 1989. In passing article 13-E of the Public Health Law, the Legislature stated, “[T]here is a substantial body of scientific research showing that breathing secondhand smoke is a significant health hazard for nonsmokers.” (L 1989, ch 244, § 1.)
Recent New York State court decisions have reiterated this legislative finding in a myriad of circumstances. (See, DeMatteo v DeMatteo, 194 Misc 2d 640, 641 [Sup Ct, Oneida County 2002, Julian, J.] [wherein the court took judicial notice that “environmental tobacco smoke is a carcinogen and causes lung cancer in otherwise healthy nonsmokers and that the children of smoking parents suffer a higher incidence of respiratory infections and smaller rates of increases in lung functions”]; McCormick v Moran, 182 Misc 2d 568 [Watertown City Ct 1999] [wherein the court found that tobacco smoke residue left by a tenant, due to excessive smoking, created an offensive odor and a potential health risk that may arise to others who may use the premises, establishing the grounds for a monetary recovery sought by the landlord to clean the premises]; Herbert Paul, CPA, P.C. v 370 Lex, L.L.C., 7 Misc 3d 747 [Sup Ct, NY County 2005] [wherein the court, while recognizing that Public Health Law article 13-E regulates smoking in certain public areas and that no private cause of action was created by this article, nonetheless recognized that one who smokes may be liable for a private nuisance due to smoke infiltration].)
While it is clear that article 13-E of the Public Health Law regulates smoking and exposure in certain public areas, it is equally clear, however, that the Legislature specifically exempted applicability of the article to “private residences.” (Public Health Law § 1399-q.) The Legislature, therefore, while recognizing that ETS is a significant health hazard, wherever it may be encountered, chose to regulate only exposure in selected public places.
*208 Plaintiff/claimant’s recovery, if any, therefore must lie under the theory that the defendant herein created a private nuisance for which she is liable, either intentionally or negligently.* A nuisance is a harm, injury, inconvenience or annoyance, and as compared to a public nuisance, a private nuisance threatens one person or a relative few. (Copart Indus. v Consolidated Edison Co. of N.Y., 41 NY2d 564, 568 [1977], citing McFarlane v City of Niagara Falls, 247 NY 340, 344 [1928].) An essential feature of a private nuisance is an interference with the use and enjoyment of the premises. It is actionable by the individual person or persons whose rights have been disturbed. (Id.; see, also, Zimmerman v Carmack, 292 AD2d 601 [2002].)
In the strikingly similar case of Paul v 370 Lex, L.L.C. (7 Misc 3d 747 [Sup Ct, NY County 2005]), the plaintiff therein sought recovery, inter alia, when all rooms in the plaintiffs office were adversely affected by the infiltration of the secondhand smoke from an adjoining office suite. As in the case at bar, the plaintiff in Paul (id. at 748) complained many times, both orally and in writing to both the adjoining tenant and the landlord. Further, just as in the case at bar, the lease in Paul provided that the respective tenants would not use the premises “in a manner which would be offensive or objectionable to other building occupants . . . , or in any way interfere with other building tenants.” (Id. at 749.)
As in Paul v 370 Lex, L.L.C. (id.), wherein the court held that the adjoining tenant may be liable to the plaintiff for a private nuisance, this court hereby finds that the plaintiff/claimant herein has established his cause of action, against defendant, for private nuisance, created by the defendant through her actions of smoking, for which she is now liable for damages sustained by the plaintiff/claimant. More specifically, this court finds that paragraph 24 of the defendant’s lease agreement (defendant’s exhibit A) specifically provided, inter alia, that the *209 defendant would not “do or permit anything that will interfere with the rights, comforts or conveniences of other Tenants.” That, in fact, by defendant’s own testimony, she admitted to smoking in her apartment, a fact that she further admitted to Officer James Gallup of the Town of Manlius Police Department, to which he testified.
Further, this court finds that, based upon the testimony of the plaintiff/claimant herein, as further evidenced by plaintiff/claimant’ s exhibits 3 and 4, the plaintiff/claimant herein did complain, both in writing and orally to not only the landlord, but also to the defendant herself, but to no avail. This court finds that the admitted behavior of the defendant herein created ETS which infiltrated plaintiff/claimant’s apartment causing an interference with the use and enjoyment of the premises.
Plaintiff/claimant’s proof, however, fails to establish the entire extent of damages allegedly caused by the defendant’s actions. While plaintiff/claimant submits plaintiff/claimant’s exhibit 6, unsworn correspondence from a Marcia Sandford, nurse practitioner at Family Care Medical Group, PC., dated March 14, 2005, Ms. Sandford was neither called as a witness, nor subjected to cross-examination as to her qualifications to render a medical opinion, or to the basis for such an opinion, if given. In fact, her correspondence indicates that her position is that “tobacco smoke is not only a health hazard to those exposed, but is of particular concern when considering the well-being of individuals with increased vulnerabilities.” While opining that “[ejxposure to cigarette smoke has caused, and can only aggravate, a condition such as that of [the plaintiff/claimant herein],” there is no specific reference to any specific medical damages allegedly incurred by the plaintiff/claimant herein, nor any opinion as to the monetary damages resultant therefrom. This court therefore declines to award any monetary damages to the plaintiff/claimant herein for medical expenses allegedly incurred as a direct result of the defendant’s actions.
Further, plaintiff/claimant also fails to establish the existence of any increased power consumption as alleged. In fact, following this court’s review of plaintiff/claimant’s exhibit 15 (the account activity statement from Niagara Mohawk for the period from February 2002 to May 2005), this court is of the opinion that no appreciable additional consumption is demonstrated and this court again declines to award any monetary damages to the plaintiff/claimant herein for the same.
*210 As to the plaintiff/claimant’s monetary claim for the air purification equipment purchased by him as a direct result of the private nuisance created by the defendant herein, this court does find that the plaintiff/claimant was forced tc incur said expenses. This court therefore finds in plaintiff/claimant’s favor in the amount of $335.13, the amount of the air purification equipment, as evidenced by the actual receipts entered into evidence by the plaintiff/claimant herein (plaintiff/claimant’s exhibits 12, 13).
Accordingly, based upon the above, it is the order and judgment of this court that judgment be awarded to the plaintiff/claimant herein in the amount of $335.13, together with filing fees of $20, for a total judgment of $355.13.

 Nuisance and trespass are analogous in some respects, although one is distinguishable from the other. The distinction is that a nuisance consists of the use of one’s own property in such a manner as to cause injury to the property or other right or interest of another, and generally results from the commission of an act beyond the limits of the property affected; a trespass is a direct infringement of another’s right of property. One may be liable for a private nuisance where the wrongful invasion of the use and enjoyment of another’s land is intentional and unreasonable. It is distinguished from trespass which involves the invasion of a person’s interest in the exclusive possession of land. To constitute a trespass, the act must be willful or so negligent as to be regarded as willful. (81 NY Jur 2d, Nuisances § 3.)