OPINION OF THE COURT
 

 Levine, J.
 

 Appellants are a group of approximately 65 current and former tenants of an apartment building located at 265 East 66th Street in Manhattan. Following a pervasive rent strike, the landlord commenced summary nonpayment proceedings to recover unpaid rent for the period October 1987 through May 1988. In a joint trial before the Civil Court the tenants conceded the landlord’s prima facie case of rent nonpayment but asserted as an affirmative defense and counterclaim the landlord’s breach of the implied warranty of habitability (Real Property Law § 235-b). The tenants also counterclaimed,
 
 inter alla,
 
 for an award of attorneys’ fees.
 

 The trial court interpreted Real Property Law § 235-b as requiring that "the premises * * * be maintained in accordance with the reasonable expectations of the tenant” (150 Misc 2d 642, 650). Accordingly, because these tenants resided in a uniquely designed building on Manhattan’s "fashionable” upper east side and paid comparatively high rents, the court concluded that the reasonable expectations against which the landlord’s performance would be measured "encompassed more than the minimal amenities”
 
 (id.,
 
 at 650, 651). Applying this standard to the evidence before it, the court held that the landlord had breached the implied warranty of habitability and awarded the tenants a 10% abatement for the common area problems and additional abatements of from 1 to 11% for individual apartment complaints for the portion of each tenancy that fell within the six-year Statute of Limitations period.
 

 Because of the various rent abatements awarded,
 
 [1]
 
 the land
 
 *587
 
 lord received significantly reduced judgments on his unpaid rent claims and, in some cases, judgment was entered in the tenant’s favor. Additionally, the trial court held that the tenants as a group were entitled to attorneys’ fees as the prevailing parties and that prejudgment interest should be denied the landlord on an estoppel theory but awarded to those tenants who received a judgment in their favor.
 

 On appeal to the Appellate Term the landlord challenged the propriety of the warranty of habitability abatements. Following its legal and factual review of Civil Court’s disposition of the case
 
 (see,
 
 CPLR 5501 [d]), that court rejected the trial court’s use of a heightened warranty standard and found that under the proper standard only one of the building-wide conditions — elevator service problems — warranted an abatement
 
 (see,
 
 154 Misc 2d 737). Appellate Term thus reduced the common area abatement to 5% and limited it to the period May 1987 through May 1988. As to the conditions of the individual apartments, Appellate Term concluded that with respect to 16 of the apartments the evidence did not support an additional abatement and that with respect to the remaining apartments, a remand for recalculation under the appropriate standard and for specific findings as to the nature and duration of the defects was necessary. In light of its remand order, Appellate Term declined to make a final determination on the issues of attorneys’ fees and prejudgment interest
 
 (id.,
 
 at 744).
 

 The Appellate Division granted the tenants’ motions for leave to appeal, and upon review, modified Appellate Term’s remand direction only to the extent of deleting the requirement that Civil Court make specific findings as to the amount of offset attributable to each apartment-specific defect, and as modified, otherwise affirmed (205 AD2d 339). That same panel of the Appellate Division subsequently granted the tenants’ motions to appeal to this Court, certifying the following question for our review: "Was the order of this Court, which modified the order of [the Appellate Term of] the Supreme Court, properly made?” We now answer that question in the affirmative.
 

 Pursuant to Real Property Law § 235-b, every residential lease contains an implied warranty of habitability which is limited by its terms to three covenants: (1) that the premises are "fit for human habitation”, (2) that the premises are fit for "the uses reasonably intended by the parties”, and (3) that the
 
 *588
 
 occupants will not be subjected to conditions that are "dangerous, hazardous or detrimental to their life, health or safety” (Real Property Law § 235-b).
 
 [2]
 
 In
 
 Park W. Mgt. Corp. v Mitchell
 
 (47 NY2d 316, 327,
 
 cert denied
 
 444 US 992), this Court described the statutory warranty as creating an implied promise by the landlord that the demised premises are fit for human occupancy. We specifically rejected the contention that the warranty was intended to make the landlord "a guarantor of every amenity customarily rendered in the landlord-tenant relationship” and held that the implied warranty protects only against conditions that materially affect the health and safety of tenants or deficiencies that "in the eyes of a
 
 reasonable person
 
 * * * deprive the tenant of those
 
 essential functions
 
 which a residence is expected to provide”
 
 (id.,
 
 at 327, 328 [emphasis supplied]).
 

 While Civil Court based its finding of a breach of the warranty of habitability in part on conditions reasonably related to health and safety and essential functions, it did not limit the implied warranty to such matters. Instead, the court interpreted the second prong of the statutory covenant — that the premises are fit for "the uses reasonably intended by the parties” — as encompassing the level of services and amenities that tenants reasonably expect to be provided under the financial and other terms of their individual leases.
 

 We reject Civil Court’s interpretation of the statute. As discussed, the implied warranty of habitability sets forth a minimum standard to protect tenants against conditions that render residential premises uninhabitable or unusable. Thus, the statutory reference to "uses reasonably intended by the parties”, rather than referring to a broad spectrum of expectations arising out of the parties’ specific contractual arrange
 
 *589
 
 ment, reflects the Legislature’s concern that tenants be provided with premises suitable for residential habitation, in other words, living quarters having "those essential functions which a residence is expected to provide”
 
 (Park W. Mgt. Corp. v Mitchell, supra,
 
 at 328). This prong of the warranty therefore protects against conditions that, while they do not render an apartment unsafe or uninhabitable, constitute deficiencies that prevent the premises from serving their intended function of residential occupation. Thus, for example, Appellate Term correctly concluded that operable elevator service is an essential attribute of a high-rise residential apartment building because a reasonable person could find that it is indispensable to the use of the demised premises.
 

 The trial court’s contrary interpretation, based on expectations arising from the terms of the lease, would make the statutory implied warranty of habitability coextensive with the parties’ lease agreement. However, the statute’s non-waiver clause (Real Property Law § 235-b [2]) indicates a legislative intent to insure the independence of the warranty of habitability from the specific terms of a lease. Moreover, as we noted in
 
 Park W. Mgt.,
 
 section 235-b was intended to provide an objective, uniform standard for essential functions, while the trial court’s standard creates an individualized subjective standard dependent on the specific terms of each lease. Furthermore, grafting the tenant’s contractual rights onto the implied warranty would unnecessarily duplicate other legal and equitable remedies of the tenant
 
 (see,
 
 3 Warren’s Weed, New York Real Property, Leasing of Residential Property: Rights and Obligations of Landlords and Tenants §§ 6.03, 7.01 [4th ed]).
 

 Appellate Term thus correctly rejected the trial court’s application of the warranty of habitability. We also agree with Appellate Division’s determination that in light of the order remitting the case to Civil Court for recalculation of the abatement awards, it was premature to review Civil Court’s determination of the tenants’ counterclaim for attorneys’ fees. Likewise, because Appellate Term’s remittal order vacated the existing judgments, it was premature for the appellate courts below to review the parties’ entitlement to prejudgment interest. We note, however, that entitlement to prejudgment interest is not dependent on prevailing party status, but rather, where, as here, the action is based on a claim of default on the lease agreement
 
 (see,
 
 RPAPL 711) and involves counterclaims for breach of the warranty of habitability and rent over
 
 *590
 
 charges, the action sounds in contract and any party is thus entitled to prejudgment interest upon recovery of a money judgment
 
 (see,
 
 CPLR 5001 [a]; Siegel, NY Prac § 411, at 623 [2d ed 1991]).
 

 Accordingly, the order of the Appellate Division should be affirmed, with costs, and the certified question answered in the affirmative.
 

 Chief Judge Kaye and Judges Simons, Titone, Bellacosa and Ciparick concur; Judge Smith taking no part.
 

 Order affirmed, etc.
 

 [1]
 

 . In addition to the breach of warranty of habitability abatements, certain tenants received an additional rent offset representing rent overcharge damages.
 

 [2]
 

 . Real Property Law § 235-b provides in pertinent part:
 

 "1. In every written or oral lease or rental agreement for residential premises the landlord or lessor shall be deemed to covenant and warrant that the premises so leased or rented and all areas used in connection therewith in common with other tenants or residents are fit for human habitation and for the uses reasonably intended by the parties and that the occupants of such premises shall not be subjected to any conditions which would be dangerous, hazardous or detrimental to their life, health or safety. When any such condition has been caused by the misconduct of the tenant or lessee or persons under his direction or control, it shall not constitute a breach of such covenants and warranties.
 

 "2. Any agreement by a lessee or tenant of a dwelling waiving or modifying his rights as set forth in this section shall be void as contrary to public policy.”