OPINION OF THE COURT
Michael D. Stallman, J.
Does an attorney’s return address invalidate otherwise sufficient statutory mailings under CPLR 308 (2) or 3215 (g) (3)? If so, should it be deemed a fatal jurisdictional defect in either case? Does a neighbor’s nudity and offensive sexual conduct while alone, viewable through a window by the tenant of a condominium unit, give rise to a claim for constructive eviction or breach of warranty of habitability against the owner of the tenant’s unit? Can a former tenant claim a share of the new tenant’s higher rent?
In this plenary action, plaintiff owner of a condominium apartment seeks back rent from defendant tenant for the months of March and April 1995. The lease rent was $3,870 per month. It is undisputed that defendant vacated the subject apartment on March 31, 1995. Defendant claims that since April 1994, plaintiff refused to prevent a neighboring tenant from occasionally appearing nude or masturbating in his apartment, viewable by defendant. Defendant asserts that he informed plaintiff of the problem orally and in writing; the only written evidence of such notification is a letter dated February 8, 1995, indicating that defendant intended to vacate as of March 31, 1995.[1] It is undisputed that plaintiff commenced a nonpayment summary proceeding against the neighbor in June 1994, and that the neighbor vacated in October 1994, after issuance of a warrant of eviction.
Plaintiff moves to dismiss defendant’s affirmative defenses and counterclaim. Defendant cross-moves for summary judgment on his counterclaim for alleged nonhabitability.
I
Defendant’s first affirmative defense asserts improper service, alleging that the statutory mailing of the summons and complaint was void under CPLR 308 (2), because its return address contained the name and address of plaintiff’s counsel, and his status as an attorney.
*11 CPLR 308 provides, in pertinent part, that personal service upon a natural person may be made: "2. by delivering the summons within the state to a person of suitable age and discretion at the actual place of business, dwelling place or usual place of abode of the person to be served and by either mailing the summons to the person to be served at his or her last known residence or by mailing the summons by first class mail to the person to be served at his or her actual place of business in an envelope bearing the legend personal and confidential’ and not indicating on the outside thereof, by return address or otherwise, that the communication is from an attorney or concerns an action against the person to be served” (emphasis supplied).
In his affidavit of service, Richard Dombakly states that after delivering a copy of the summons and complaint by substituted service to defendant’s co-worker at his place of business on February 28, 1996, he mailed a copy of the summons and complaint by first class mail to defendant at his business address in an envelope marked "personal and confidential” not bearing any identification to a lawsuit.
In his response to interrogatory 19, defendant stated that "the envelope in which the summons and complaint were enclosed bears the metered date from plaintiff’s attorney’s office of March 11, 1996.” Plaintiff contends that the March 11, 1996 metered envelope contained the additional notice required by CPLR 3215 (g) (3) and plaintiffs counsel’s cover letter dated March 8, 1996. It is undisputed that the CPLR 3215 (g) (3) notice was sent in an envelope bearing plaintiffs counsel’s return address.
In opposition to plaintiffs motion, defendant asserts that on or about March 18, 1996 he received a copy of the summons and complaint by mail at his place of business, in an envelope bearing the return address of plaintiffs counsel.[2]
The portions of CPLR 308 (2) and 3215 (g) (3) at issue here share similar purposes: they enhance the probability that a defendant would receive actual notice of the action, while safeguarding privacy when the mailing is directed to the defendant’s worksite.
CPLR 308 (2) is the general provision governing substituted ("suitable age and discretion”) service. Inclusion of the *12 confidentiality provision in CPLR 308 indicates the legislative intent that it be considered a necessary element of proper jurisdictional service, which the plaintiff must prove. Failure to mark the envelope personal and confidential” has been held a jurisdictional defect. (Broomes-Simon v Klebanow, 160 AD2d 973; Pesner v Fried, 166 AD2d 512.) Therefore, any indication on the envelope that it concerns a lawsuit, e.g., a return address disclosing its provenance from a law firm, would also constitute a jurisdictional defect.
In contrast, CPLR 3215 (g) governs the additional mailing that must be made before a default judgment may be entered in a contract action. Contextually, it is clear that this provision is intended to provide additional notice, as a supplement to that which may have been provided by the service of process. (See generally, Siegel, 1996 Supp Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C3215:19A, 1997 Pocket Part, at 99.) Because proof of this additional mailing is a prerequisite to entry of a default judgment, it presupposes that valid service of process had previously been completed and that personal jurisdiction thereby had been acquired. Indeed, the Legislature’s relocation of this provision to CPLR 3215 from its prior location as an unnumbered paragraph of CPLR 308 made clear its intention that CPLR 3215 (g) (3) notice is not jurisdictional. (L 1986, ch 77.) Thus, failure to give proper CPLR 3215 (g) (3) notice simply prevents entry of a default judgment and does not require dismissal of the action.
CPLR 3211 (b) provides that a party may move to dismiss one or more defenses on the ground that a defense "is not stated or has no merit.” Whether the motion is based on lack of legal basis or lack of substantial merit, the movant bears the burden of coming forward with sufficient proof to demonstrate that the defense cannot be maintained. If the movant meets its burden of showing that the defense lacks factual merit, the burden then shifts to the pleader to show, by competent evidence, the existence of a triable factual issue respecting the defense’s merit. (See, 1 Chase, Weinstein-Korn-Miller CPLR Manual, § 21.05 [2d ed].)
Here, movant has met its burden of coming forward with sufficient proof that the defense cannot be maintained and the pleader has shown by competent evidence the existence of a triable factual issue respecting personal jurisdiction.
Based on the proof submitted, this court cannot determine whether the envelope defendant admits receiving on March 18, 1996, which listed counsel’s return address, contained the pro *13 cess server’s follow-up mailing of the summons and complaint, which would be a jurisdictional defect, or counsel’s March 8, 1996 letter and the additional CPLR 3215 (g) (3) mailing, which would not constitute a jurisdictional defect.
Accordingly, this matter is referred for a traverse hearing to Special Term, Part II on the issue of the contents of the envelope or envelopes received and whether they bore plaintiff’s counsel’s return address.
II
Defendant’s second affirmative defense asserts that he was constructively evicted from the premises because plaintiff allowed another tenant in the building to engage in illegal and immoral conduct.
Defendant has not met his burden of proving that the plaintiff deprived him of the beneficial use of a substantial portion of the premises, thereby forcing him to vacate. (See, Barash v Pennsylvania Term. Real Estate Corp., 26 NY2d 77.) Defendant has not proven that he actually moved out because of the condition, within a reasonable time of the condition’s occurrence. Indeed, because the neighbor moved out five months before defendant vacated, defendant cannot assert that his own move resulted from the neighbor’s continued offensive conduct. Neither can defendant claim that he did not have use of the premises. Defendant continued to live there and is obligated to pay the agreed upon rent. Accordingly, the second affirmative defense is hereby dismissed. It is not necessary to consider the validity or effect of the lease clause that appears to exculpate the unit owner from the acts of other building occupants.[3]
*14 Defendant’s third affirmative defense asserts that as a result of the alleged constructive eviction, plaintiff was able to rent the apartment, commencing May 1, 1995, at a higher monthly rate than the amount set forth in the parties’ lease, and that plaintiff thereby benefitted. This does not state a cognizable defense to plaintiff’s claim. Defendant’s voluntary decision to vacate during the lease term does not create a constructive partnership or an equitable trust or give rise to an unjust enrichment claim. Defendant is not entitled to claim a share of the increased rent paid by the new tenant as an offset against unpaid rent. Accordingly, this defense is hereby dismissed.
Defendant’s counterclaim seeks $25,000 in damages for the alleged resulting uninhabitability” and constructive eviction (answer ¶ 19). Whether analyzed in a light most favorable to the pleader as the court must on a motion to dismiss (CPLR 3211 [a] [7]), or as a motion for summary judgment (CPLR 3212) as urged by defendant himself, the counterclaim does not plead, and defendant’s accompanying affidavits do not set forth, a valid claim. (See, Rovello v Orofino Realty Co., 40 NY2d 633.) Defendant’s allegations about the neighbor’s acts, even if true, are insufficient as a matter of law. Neither the pleading nor the proof demonstrates that the neighbor’s acts rendered the leased premises unfit for human habitation, or that they created conditions that were dangerous to life, health or safety or that they denied defendant any essential functions. (See, Solow v Wellner, 86 NY2d 582.) By definition, the warranty of habitability does not extend to aesthetics or inconveniences which do not render premises dangerous or unsafe (Park W. Mgt. Corp. v Mitchell, supra, at 328) even if unexpected in a luxury building. (See, Solow v Wellner, supra.) Disinclination to catch an occasional glimpse of a neighbor under the circumstances set forth here does not constitute breach of the warranty of habitability.[4] Moreover, the lease clearly prohibited the interposition of counterclaims in any action between the parties related directly or indirectly to the lease. Accordingly, the counterclaim is dismissed.

. The letter requests only that plaintiff attempt to rerent the apartment; it does not request any other action, i.e., against the neighbor.

. Defendant’s memorandum of law asserts that defendant received two mailings bearing plaintiffs attorney’s return address, and asserts that they were the CPLR 308 service by mail copy and the CPLR 3215 (g) (3) mailing with the lawyer’s cover letter.

. Such a form clause appears to presuppose that one condominium unit owner has no control over the activities of another unit owner or its tenant. However, under certain circumstances, the acts of persons not under a landlord’s control can be the predicate for a breach of the warranty of habitability or a constructive eviction. (See, generally, Park W. Mgt. Corp. v Mitchell, 47 NY2d 316.) Any agreement purporting to waive the landlord’s breach of the warranty of habitability is void. (Real Property Law § 235-b.) A fortiori, a lease clause cannot exculpate an owner from a constructive eviction arising from conditions that constitute a breach of the warranty of habitability. Moreover, it is undisputed that plaintiff owned the neighboring unit occupied by the offending neighbor. Plaintiff here does not occupy a position similar to that of a single unit owner who does not control the neighboring unit as envisioned by the form lease clause (supra). Plaintiff here, in privity with both defendant and the offending neighbor, is more analogous to an owner of a rental building.

. The neighbor’s alleged behavior neither involved common areas nor other building occupants nor members of the public; by nature and magnitude it did not constitute a public nuisance. "Whether defendant might have sought injunctive or plenary relief to abate a private nuisance is now academic and speculative. (See, Bernard v 345 E. 73rd Owners Corp., 181 AD2d 543 [tenant did not state cause of action for private nuisance against owner predicated on upstairs tenant’s acts in noncommon area].)