*478 OPINION OF THE COURT
James C. Harberson, Jr., J.
Facts
The plaintiffs examined a home before renting it from the defendant. After going through the house except for the basement, as the light was not working and the defendant told the plaintiffs there was no “water” problems, the plaintiffs signed a two-year lease on September 11, 2001 for a term from October 1, 2001 to October 1, 2003 at $450 per month as well as paying a $450 security deposit.
The plaintiffs testified they were aware that the house was built before 1978, that it was their intention to do some painting before moving in and that some of the plumbing had been replaced but not all of it had been changed. The plaintiffs said that no questions were asked concerning whether there was lead-based paint in this house before the lease was signed by them.
The plaintiffs commenced to scrape the paint from the window sills and under the surface layers they found lead paint was present. The plaintiffs testified that it was lead paint based on its appearance as compared to non-lead-based paint. There was some dampness discovered in the basement and apparently some mold. The plaintiffs asked the defendant to be released from the September 11, 2001 contract due to their concerns about the exposure to lead paint and mold spores.
The defendant testified that the house had been purchased as a rental property, that there was no lead plumbing remaining, the surfaces had been painted with a water-based paint and the dampness in the basement was not due to a sewer backup or seepage, but, rather, due to water left over from a cleanup the defendant had done in the basement. The defendant said that within two days of the September 11, 2001 lease signing the plaintiffs initially called asking to be freed from their lease obligations because of finding a larger place to lease only followed up by the complaints at issue in the letter of September 18, 2001 when the defendant objected to ending the lease agreement.
Law
Real Property Law § 235-b (1) states that “In every written or oral lease or rental agreement for residential premises the landlord or lessor shall be deemed to covenant and warrant that the premises * * * are fit for human habitation * * * and that the occupants of such premises shall not be subjected to *479 any conditions which would be dangerous, hazardous or detrimental to their life, health or safety.”
In Solow v Wellner (86 NY2d 582, 587-588), the Court said “[p]ursuant to Real Property Law § 235-b, every residential lease contains an implied warranty which is limited by its terms to three covenants: (1) that the premises are ‘fit for human habitation’, * * * and (3) that the occupants will not be subjected to conditions that are ‘dangerous, hazardous or detrimental to their life, health or safety.’ ”
The Solow Court went on to explain that it had previously “held that the implied warranty protects only against conditions that materially affect the health and safety of tenants” (id. at 588; see, Park W. Mgt. Corp. v Mitchell, 47 NY2d 316, cert denied 444 US 992).
In Juarez v Wavecrest Mgt. Team (88 NY2d 628, 640-641), the Court said “[t]he serious health hazard posed to children by exposure to lead-based paint is now well established” as “[h]igh blood lead levels can produce brain damage, coma or death, and even relatively low levels can lead to significant nervous system damage * * * .”
Public Health Law title X — Control of Lead Poisoning— reflects the Legislature’s deep concern for the public’s exposure to lead in the environment in general and areas of “high risk” in particular. A “high risk” area is defined as “consisting of * * * dwellings in which a condition conductive to lead poisoning of children is present” where the “surface-coating material containing lead [is] in a condition accessible” allowing exposure to lead or “other environmental conditions which may result in significant lead exposure” (Public Health Law § 1370 [2], [3]). The abatement required under this statute, besides addressing “surface-coating material containing lead,” also requires “the removal of lead contaminated soils or lead pipes supplying drinking water as may be deemed necessary to protect the life and health of occupants of the dwelling” (Public Health Law § 1373 [2]).
In Edgemont Corp. v Audet (170 Misc 2d 1040, 1041), the court found a tenant’s counterclaim based on a breach of the warranty of habitability due to “extremely elevated levels of lead-laden dust in the apartment, which condition constituted a threat to the health of tenant’s infant daughter” (“in connection with the removal of lead paint”), was valid. The facts show the “court found that the presence of the lead had rendered the apartment unusable and granted tenant a total abatement” of rent for several months. (Id. at 1042.)
*480 Decision
In every residential lease there is a covenant imposed by Real Property Law § 235-b (1) that the landlord warrants the occupants “shall not be subjected to any conditions which would be * * * hazardous or detrimental to their * * * health.” The Solow Court stated that this “implied warranty protects only against conditions that materially affect the health * * * of tenants” (86 NY2d at 588). In Juarez the Court noted “the serious health hazard posed to children by exposure to lead-based paint is by now well established” (88 NY2d at 640).
The Legislature has enacted Public Health Law title X for the “Control of Lead Poisoning” mandating the abatement of “surface-coating material containing lead” “in which a condition conductive to lead poisoning of children is present” as well as “other environmental conditions which may result in significant lead exposure” (Public Health Law § 1370 [2], [3]) by abatement of the lead risk from the “surface-coating materials” and “the removal of lead contaminated soils or lead pipes supplying drinking water [when] deemed necessary to protect the * * * health of occupants” (Public Health Law § 1373 [2]). See, also, lead-paint disclosure requirements of Real Property Law article 14 (Property Condition Disclosure Act) effective March 1, 2002.
The court finds as a matter of law based on the Juarez case and the Legislature’s enactment of Public Health Law article X that the presence of lead-based paint (“a serious health hazard” [Juarez]) in any leasehold which is or can become “a condition conducive to lead poisoning of children” (Public Health Law § 1370 [2]) living there violates the implied covenant of the warranty of habitability in all residential leases that it is “fit for human habitation” and that “occupants of such premises shall not be subjected to any conditions which would be dangerous, hazardous or detrimental to their * * * health * * * ” (Real Property Law § 235-b [1]).
The court finds that the threat to human health due to the presence of lead-based paint in a dwelling — unless abated as required by Public Health Law § 1373 (2) before a person whose age or condition renders them susceptible to lead poisoning occupies a rental property — is a basis to claim a violation of the warranty of habitability due to the danger to health. Tenants in such a case may seek the rent abatement remedy available for the breach of this covenant of their lease contract under Real Property Law § 235-b. (See, McCormick v Moran, 182 Misc 2d 568, 569 [secondhand smoke residue]; Edgemont Corp., supra.)
*481 In this case the credible evidence shows that the defendant knew the house contained lead-based paint, that the plaintiffs had one young child moving into it as well as one child en ventre sa mere, that the defendant knew of the danger of lead-based paint to children’s health, and that the defendant knew that by consenting to the repainting of the leasehold by the plaintiffs lead-based paint would be exposed due to the scraping of the areas to be painted. The evidence shows that the defendant rejected removing the lead-based paint uncovered by the plaintiffs when it was exposed before they were to occupy the house.
The court finds that, because of the danger to the plaintiffs’ children’s health due to the hazardous conditions of the lead-based paint, the defendant has breached the warranty of habitability covenant in the lease contract.
The plaintiffs are awarded a judgment of $900 together with costs of $10. The defendant’s request for the cost of rerenting is denied.