OPINION OF THE COURT
Thomas Marcelle, J.
Landlord Maria Pena brought a nonpayment proceeding against her tenant Frank Lockenwitz pursuant to RPAPL 711 (2). The respondent tenant appeared, provided an oral answer (RPAPL 743; 22 NYCRR 210.7), and a bench trial was held (RPAPL 745). Based upon the evidence adduced at the trial, the court finds as follows:
The parties entered into a written lease agreement in October 2015 (exhibit 1). The lease required that the tenant pay $850 per month. The tenant received a subsidy from the Cohoes Housing Authority under the auspices of the Section 8 voucher program of the Housing Act of 1937 which is codified in 42 USC § 1437. Cohoes Housing submitted the subsidy directly to the landlord pursuant to a written agreement which was executed by Cohoes Housing, the landlord and the tenant (exhibit 6).
All proceeded without issue until April 2016. At that time, landlord Pena complained to Cohoes Housing that the tenant had unacceptable amounts of debris in the yard and unmitigated cat feces in the apartment and in the hallway. On April 1, 2016, Cohoes Housing threatened to terminate the subsidies unless the tenant remedied the problems (exhibit 2). Tenant Lockenwitz resolved the problems and then proceeded to make a complaint against the landlord. On April 8, 2016, Cohoes Housing issued a letter to the landlord. The letter cited a dozen items that constituted violations which the landlord had to correct within 30 days or the subsidy would be terminated (exhibit *430 B). Landlord Pena testified that she viewed the tenant’s grievance to Cohoes Housing as “revenge” for her earlier complaint.
On April 11, 2016, the landlord wrote to tenant Lockenwitz and Cohoes Housing indicating that she would not make the repairs (exhibit A). Instead, the landlord demanded that the tenant “move out on May 31, 2016 at the latest” (id.). It is clear that Pena fully comprehended that as a consequence of her unwillingness to fix the code deficiencies that Cohoes Housing would no longer provide a rent subsidy (id.). In fact, Cohoes Housing responded to the landlord’s April 11 letter by essentially informing the tenant that the subsidies would end in May (exhibit 5).
A couple of observations and findings at this point are necessary to resolve conflicting evidence. The landlord alleged that she had refused to make the repairs because the tenant threatened that he would press a trespass charge if she entered the premises — an allegation which the tenant denied and the court rejects. Cohoes Housing sent the letter to the landlord on Friday, April 8 — meaning that the earliest the letter came into her possession was Saturday, April 9, but more likely on Monday the 11th. On Monday, April 11, with just an interceding weekend (or less), the landlord had already decided not to remediate the violations. Thus, the landlord failed to make a good faith effort to cure the code violations enumerated by Cohoes Housing.
Although it may not be obvious from a transcript, the parties disliked each other. The court bases this conclusion upon its visual observations of the parties, coupled with the audio tone and timbre of the testimony. Additionally, as already noted the landlord did not view the tenant’s complaint to Cohoes Housing as a legitimate action but rather as an act of revenge. Although the landlord may be right, nevertheless, a tenant’s vengeful act provides no absolution for her subsequent actions. The court finds that the preponderance of the evidence establishes that landlord Pena’s refusal to fix the defects in the apartment was done with the intent to deprive the tenant of his Section 8 rent subsidy and to retaliate against the tenant for filing a complaint about the conditions of the apartment with Cohoes Housing.
Returning to the proof, the tenant testified that he called the landlord and asked if he could continue living in the apartment and that he would pay the full $850 rent without the benefit of the Section 8 subsidy. Further, tenant Lockenwitz *431 testified that he indicated to the landlord that he could not make the June rent payment immediately (meaning on June 1) but instead needed time. June came and went and the tenant paid no rent. July came and went and the tenant again paid no rent. Lockenwitz admitted that he failed to pay June’s rent and July’s rent.
Whatever consent that the landlord may have given the tenant to make a late payment, and it is not clear that she gave any, the consent did not extend to and could not have possibly meant a complete shirking of the rental obligation. It should be noted in somewhat of a contradiction to the tenant’s earlier testimony that he intended to pay rent, albeit late, at the end of the trial the tenant claimed that his total nonpayment of rent was because of the landlord’s failure to repair the code violations.
The resolution of this case revolves around whether the landlord’s refusal to make repairs constituted unlawful retaliation in violation of Real Property Law § 223-b; and if it does, what are the consequences. In 1979, the New York State Legislature enacted Real Property Law § 223-b in an attempt to encourage tenants to report housing code violations without fear of being evicted by landlords in retaliation for the reporting.
Real Property Law § 223-b (4) provides in pertinent part:
“In any . . . summary proceeding to recover possession of real property, judgment shall be entered for the tenant if the court finds that the landlord is acting in retaliation for [a complaint by the tenant to a governmental authority of the landlord’s alleged violation of any health or safety law] and further finds that the landlord would not otherwise have commenced such action or proceeding. . . . The tenant shall not be relieved of the obligation to pay any rent for which he is otherwise liable.”
Normally, a retaliation defense involves a landlord who terminates a lease or refuses to extend a lease to punish the tenant for complaining to government authorities and then the landlord brings a holdover proceeding to evict the tenant. In contrast, an eviction for nonpayment of rent normally is unconnected to the landlord’s retaliation but relates to the tenant’s fault (not paying rent) which provides an independent and intervening justification to seek eviction. Thus, where a “tenant [has] admitted owing the rent in question . . . retaliatory *432 eviction is not a defense to a nonpayment proceeding” (601 W. 160 Realty Corp. v Henry, 189 Misc 2d 352, 353 [App Term, 2d Dept 2001] [emphasis omitted]; 390 W. End Assoc. v Raiff, 166 Misc 2d 730, 734 [App Term, 1st Dept 1995]).
Six years after its broad pronouncement in 390 W. End Assoc., the First Department, Appellate Term softened the rule. In distinguishing 390 W. End Assoc., the court “conclude[d] that the only bar in section 223-b regarding retaliatory eviction is the one where a tenant would choose to use that claim as a defense to avoid paying rent due and owing” (601 W. 160 Realty Corp. v Henry, 189 Misc 2d 352, 353 [App Term, 2d Dept 2001]). Thus, the rule morphed from a total bar of Real Property Law § 223-b in a nonpayment proceedings, to bar its use as an excuse for not paying rent.
In this case for Real Property Law § 223-b to be applicable, 601 W. 160 Realty Corp. must be distinguished. The question before this court, which was not before the Appellate Term in 601 W. 160 Realty Corp., is the applicability of Real Property Law § 223-b to a case where the landlord’s retaliation materially interferes with the tenant’s capacity to pay rent. This court holds that Real Property Law § 223-b is not a complete defense in nonpayment proceedings, but in circumstances where a landlord’s retaliation deprived the tenant of his Section 8 subsidy, Real Property Law § 223-b affords at least an offset against rent owed in a nonpayment action.
The court will not tackle the question whether tenant’s deployment of Real Property Law § 223-b should be construed as a counterclaim or an affirmative defense — it is a matter of nomenclature and nothing more. RPAPL 743 provides that the “answer may contain any legal or equitable defense, or counterclaim,” which accordingly extends the court’s jurisdiction over both affirmative defenses and counterclaims. Moreover, even if the tenant’s defense is considered a counterclaim, which ordinarily dictates severance, there is “no ground for severance of tenant’s counterclaim . . . inasmuch as the counterclaim was part and parcel of tenant’s defense to landlord’s claim for rent” (Edgemont Corp. v Audet, 170 Misc 2d 1040, 1043 [App Term, 2d Dept 1996]).
In summary, tenant’s complaint to Cohoes Housing was an activity protected under Real Property Law § 223-b (1) (a). The landlord, in bad faith, refused to fix the code violations. This act of passive resistance meant that the landlord breached the agreement with Cohoes Housing (exhibit 6). In turn, Cohoes *433 Housing ceased the monthly payment of $415 (id,.); thus, the tenant suffered the loss of his subsidy.
Therefore, the court holds that the landlord’s unlawful retaliatory conduct materially altered the tenant’s obligation to pay rent and that landlord in essence increased the rent from $435 to $850. The appropriate remedy is to deem that the rent owed the landlord under the lease is $435 per month.
Remaining is the warranty of habitability issues caused by the unremediated code violations. Pursuant to Real Property Law § 235-b, every residential lease contains an implied warranty of habitability which is limited by its terms to three covenants: (1) that the premises are fit for human habitation, (2) that the premises are fit for the uses reasonably intended by the parties, and (3) that the occupants will not be subjected to conditions that are dangerous, hazardous or detrimental to their life, health or safety. Despite the expansive language of the statute, the Court of Appeals has
“specifically rejected the contention that the warranty was intended to make the landlord a guarantor of every amenity- customarily rendered in the landlord-tenant relationship and held that the implied warranty protects only against conditions that materially affect the health and safety of tenants or deficiencies that in the eyes of a reasonable person . . . deprive the tenant of those essential functions which a residence is expected to provide” (Solow v Wellner, 86 NY2d 582, 588 [1995] [internal quotation marks and citations omitted]).
Cohoes Housing outlined a list of code violations (exhibit B). The existence of a code violation does not automatically translate into a breach of the warranty of habitability; rather, “once a code violation has been shown, the [tenant] must come forward with evidence concerning the extensiveness of the breach, the manner on which it impacted upon the health, safety or welfare of the tenants” (211 E 46th Owners LLC v Mohabir, 33 Misc 3d 1232[A], 2011 NY Slip Op 52195[U], *7 [Civ Ct, NY County 2011] [internal quotation marks and citations omitted]).
The court presented the tenant with exhibit B and asked him to explain the impact the violations had upon him and his family. Without rehashing the testimony, the court finds that the alleged effects of the code violations upon the tenant and his family were not great. An abatement is in order, but a small *434 one. The court, after carefully reviewing the evidence and studying the case law on amount of abatements in different situations, believes that a 2V2% abatement of rent (which is approximately $11 per month) suffices as a corrective measure. The rent should be abated for the months of April, May, June and July. Thus, the tenant is entitled to a credit of $44.
Based upon the foregoing and based upon the court’s consideration of the totality of the trial testimony and exhibits admitted into evidence; therefore, it is ordered that the court will issue a warrant of eviction and stay such warrant upon the condition the respondent tenant Lockenwitz pays the rent for June of $435 and the rent for July of $435 less $44 in abate-ments (which totals $826) to the petitioner landlord Pena on or before August 5, 2016 (with proof of payment submitted to the court) and it is further, ordered that the respondent tenant Lockenwitz pay the rent for August of $435 (less the $11 abatement if the code violations are not repaired) to the petitioner landlord Pena on or before August 12, 2016 (with proof of payment submitted to the court) and it is further, ordered that if respondent tenant Lockenwitz fails to make either payment described above on or before the dates specified then petitioner landlord Pena may serve the warrant on the City Marshall who shall execute the same without delay and it is further, ordered that petitioner landlord Pena will place a smoke detector in the apartment on Wednesday, August 3, 2016, during business hours, and it is further, ordered that petitioner landlord Pena will promptly repair all code violations cited in exhibit B by the end of August and to the extent that such repairs require access to the apartment, the landlord will give the tenant 24 hours notice before she or her agents enter upon the premises.