OPINION OF THE COURT
Adam Seiden, J.
Owner LMA Associates has been charged with violating International Property Maintenance Code §§ 309.1 and 309.2 (index No. 16-3198). Tenant Faith Topey has been charged with violating International Property Maintenance Code §§ (A) 101.3, 301.2 and 309.5 (index No. 16-3199). The complaints against both arise out of the same set of circumstances. The complaints charge that on September 16, 2016 Building Inspector Linda Baker, of the Mount Vernon Department of Buildings, found the presence of bedbugs in unit 324 East 4th Street, also known as 25 Millington Street No. CIO, owned by LMA Associates and occupied by tenant Faith Topey. Suburban Pest Control verified Inspector Baker’s findings. On October 12, 2016, the owner received written notice of the violation. The tenant received notice of her violation on October 17, 2016. A re-inspection of the premises by the Buildings Department on November 1, 2016 revealed that the bedbug infestation still remained from the first date of inspection on September 16, 2016. Both the owner and tenant were issued appearance ticket violations on November 1, 2016.
2015 International Property Maintenance Code provides in pertinent part:
“[A] 101.3 Intent. This code shall be construed to secure its expressed intent, which is to ensure public health, safety and welfare insofar as they are affected by the continued occupancy and maintenance of structures and premises. Existing structures and premises that do not comply with these provisions shall be altered or repaired to provide a minimum level of health and safety as required herein.”
“301.2 Responsibility. The owner of the premises shall maintain the structures and exterior property in compliance with these requirements, except as otherwise provided for in this code. A person shall not occupy as owner-occupant or permit another person to occupy premises that are not in a sanitary and safe condition and that do not comply with the requirements of this chapter. Occupants of a dwell *661 ing unit, rooming unit or housekeeping unit are responsible for keeping in a clean, sanitary and safe condition that part of the dwelling unit, rooming unit, housekeeping unit or premises which they occupy and control.”
“309.1 Infestation. Structures shall be kept free from insect and rodent infestation. Structures in which insects or rodents are found shall be promptly exterminated by approved processes that will not be injurious to human health. After pest elimination, proper precautions shall be taken to prevent reinfestation.
“309.2 Owner. The owner of any structure shall be responsible for pest elimination within the structure prior to renting or leasing the structure. . . .
“309.5 Occupant. The occupant of any structure shall be responsible for the continued rodent and pest-free condition of the structure.”
On November 22, 2016, the parties appeared for trial. The owner testified it is willing to resolve the issue, however, the tenant has been refusing to allow the exterminator access to the apartment. The owner testified that it is willing to pay for a qualified exterminator to use an insecticide to treat the bedbug problem. It stated that a qualified exterminator, Suburban Pest Control, would do two treatments, two weeks apart at a cost of $775.
The tenant testified that she has cancer and cannot do the physical work to prepare the apartment for the treatment, including moving furniture and bagging items. She also testified that she cannot be exposed to the chemicals that will be used by the exterminator recommended by the landlord. The tenant provided a letter from her doctor which states, “Due to her medical conditions and medication, it is not recommended that she be exposed to toxins/chemicals. Therefore it is recommended that a non-toxic (non-chemical) form of treatment be use[d] to rid her home of bedbugs.” The tenant insists that the exterminator use a heat method to cure the bedbug infestation. She maintains that by using the heat method, she would not have to bag her clothes and it would not be hazardous to her health. The cost for the heat method would range from $2,600 to $3,000.
The owner argues that it is willing and ready to help the tenant resolve the bedbug infestation problem in her apart *662 ment; however, it is not obligated to treat the apartment by using the heat method the tenant is insisting upon. The landlord argues that the tenant should have to pay the price differential between the cost to exterminate with an insecticide and the cost to exterminate via the heat method. The tenant is unwilling/unable to pay for the extermination fees. The court also asked the tenant if she would agree to the insecticide extermination if the court could find a way to have her belongings packed and moved for the exterminator; the tenant informed the court that she did not want anyone to move or pack her belongings. She insists that the heat method be used.
This case appears to be one of a first impression. The court found no case law directly on point relating to a dispute about the method of extermination used by a landlord or tenant to remedy an infestation code violation. The International Property Maintenance Code states in pertinent part that “if infestation is caused by failure of an occupant to prevent such infestation in the area occupied, the occupant and owner shall be responsible for pest elimination” (§ 309.4). There was no testimony by either party regarding the cause of the bedbug problem. Thus the court will hold them both responsible for the problem.
The court looked to the Real Property Law for guidance on this issue and also found no case law directly on point. Even so, the Court of Appeals has held that the legislative intent of the warranty of habitability law was to create “an objective, uniform standard for essential functions” rather than “an individualized subjective standard” (Solow v Wellner, 86 NY2d 582, 589 [1995]). It must be noted that the warranty is not intended to make the landlord “a guarantor of every amenity customarily rendered in the landlord-tenant relationship,” but only to provide protection against those “conditions that materially affect the health and safety of tenants” or those deficiencies that “in the eyes of a reasonable person . . . deprive the tenant of those essential functions which a residence is expected to provide” (Park W. Mgt. Corp. v Mitchell, 47 NY2d 316, 327-328 [1979] [emphasis added]). Moreover, Code of the City of Mount Vernon § 149-38 (A) provides that “[m]ethods used for exterminating insects . . . shall conform to generally accepted practice.” The court finds that use of insecticide is a generally accepted practice to treat the bedbug problem in the tenant’s apartment. The court fully recognizes and is sympathetic to the tenant’s health condition; however, the law does *663 not require the owner to treat the bedbugs with the more expensive heat method requested by the tenant. Further, the fact that the tenant suffers from cancer does not automatically mean she is “disabled” mandating any further accommodation by the landlord (see Sirota v New York City Bd. of Educ., 283 AD2d 369 [1st Dept 2001]). If the tenant wants to use the heat method, she must pay the cost differential. The City of Mount Vernon Buildings Department simply wants the unit treated and takes no position on the method used to treat the infestation problem.
It is hereby ordered that the tenant grant access to the owner and/or exterminator to the apartment on Wednesday, December 7, 2016 between the hours of 9:00 a.m. and 4:00 p.m. for the purposes of conducting the first extermination of the tenant’s apartment. The tenant shall make the appropriate arrangements to prepare the apartment and herself for the extermination. The tenant shall also grant the owner and/or exterminator access to the premises for follow-up treatments as deemed necessary to eliminate the bedbug infestation in the premises. The owner is to report to the court the progress of the treatment by December 9, 2016 at 4:00 p.m. After completion of the extermination services and the infestation is deemed remedied by the Department of Buildings, all violations will be deemed dismissed.