Foxwood House Assoc. LLC v Yongli Xu (2024 NY Slip Op 24029)

[*1]

Foxwood House Assoc. LLC v Yongli Xu

2024 NY Slip Op 24029

Decided on February 4, 2024

Civil Court Of The City Of New York, Queens County

Schiff, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on February 4, 2024
Civil Court of the City of New York, Queens County

Foxwood House Associates LLC, Petitioner

against
Yongli Xu, et al., Respondents

Index No. L&T 311306-23 

Pabst Galfunt & Alizio LLP
Attorneys for Petitioner
Law Offices of Rina Milos
Attorneys for Respondent

Logan J. Schiff, J.

Recitation of the papers considered in the review of Respondent's motion for summary judgment: NYSCEF Doc. Nos. 6-19.
RELEVANT BACKGROUND
Petitioner filed this nonpayment proceeding in June 2023 seeking $17,940 in arrears for the period of January-June of 2023 in an unregulated condominium unit. The Petition alleges that Respondents "are the tenant(s) of the premises pursuant to a written lease with the petitioner (or predecessor) made 6/10/21 which provided for a monthly rental of $3,000* due on the 1st day of the month." Respondent Yongli Xu, through counsel, interposed an answer on July 23, 2023.
Respondent now moves for summary judgment. He argues that this proceeding must be dismissed because there was no rental agreement in effect as of commencement, a statutory prerequisite to maintenance of a nonpayment. In support of his motion, Respondent attaches a copy of parties' last lease (NYSCEF 12), which expired on September 30, 2022, and was not renewed.
In opposition, Petitioner contends that notwithstanding the expiration of the lease, the parties' created a statutory month-to-month tenancy by virtue of a payment made in April 2023 on Respondent's behalf through the Emergency Rental Assistance Program (ERAP). Petitioner argues that a month-to-month tenant can be sued in a nonpayment for any months he does not pay even in the absence of a lease. In addition, Petitioner posits that its acceptance of ERAP funds, which barred Petitioner from evicting Respondent for twelve months, created an implied [*2]rental agreement for a twelve-month period, an independent basis for a nonpayment.

DISCUSSION
Real Property Actions and Proceedings Law (RPAPL) 711(2) creates the subject matter jurisdiction for a summary nonpayment proceeding, which is maintainable only where "[t]he tenant has defaulted in the payment of rent, pursuant to the agreement under which the premises are held " A nonpayment essentially sounds in breach of contract (see Solow v. Wellner, 86 NY2d 582, 589-90 [1995]), with the tenant retaining the option to cure the default at any time prior to eviction by tendering the rent due (see RPAPL 749(3); Park Summit Realty Corp. v Frank, 434 NYS2d 73 [App Term, 1st Dept 1980]).
To the extent the phrase "agreement under which the premises are held" in RPAPL 711(2) leaves room for interpretation — i.e., can a nonpayment encompass a default under one or more prior leases between the parties or just the current contract — the appellate courts in the Second Department have held that "a nonpayment proceeding must be predicated on an existing unexpired agreement to pay rent." (Shahid v Carillo, 859 NYS2d 899 [App Term, 2d Dept, 2d &11th Jud Dists 2008]); see also Fairfield Beach 9th, LLC v Shepard-Neely, 182 NYS3d 486 [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2022] ["[T]here must be a rental agreement in effect at the time the proceeding is commenced pursuant to which rent is due and owing."]; 265 Realty, LLC v Trec, 975 NYS2d 370 [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2013]).
If a nonpayment can only vindicate the breach of an existing contract, it follows that a landlord waives its right to dispossess a tenant via RPAPL 711(2) for a default in payment under an agreement that concluded prior to commencement. Thus, in Fairfield Beach 9th, LLC v Shepard-Neely, the Appellate Term dismissed a proceeding premised on the tenant's failure to make payments due under a series of rent-stabilized renewal leases that expired prior to the filing, notwithstanding evidence that the tenant signed the leases long after they were tendered (182 NYS3d 486 [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2022]; see generally Stepping Stones Assocs v. Seymour, 806 NYS2d 449 [App Term, 2d Dept, 9th & 10th Jud Dists 2005] [The right to maintain a nonpayment proceeding is waivable, including where a tenant's right to possession flows from a renewal lease], affd 48 AD3d 581 [2d Dept 2008]).
While much of the case law concerns rent-stabilized apartments, the statutory requirements for a 711(2) proceeding apply with equal force in the unregulated context, including in month-to-month tenancies. Where a landlord cannot establish the existence of an ongoing agreement to pay rent, a nonpayment will not lie (see Krantz & Phillips, LLP v Sedaghati, 2003 NY Slip Op 50032[U] [App Term, 1st Dept 2003]; Matter of Jaroslow v Lehigh Val. R.R. Co., 23 NY2d 991 [1969]).[FN1]

In the present matter, it is undisputed that the parties' last lease expired in September 2022 and was not renewed. Petitioner claims that a month-to-month tenancy was created by virtue of ERAP payments earmarked for the period of October-December 2022. Generally, where a tenant makes payments to a landlord after expiration of their lease, a statutory month-to-month tenancy is created (see Real Property Law ("RPL") 232-c). According to Petitioner, once month-to-month tenancy is established there is an implied agreement to pay rent for any months the tenant remains in possession, which may be sought in a nonpayment proceeding.
A review of the case law reveals that the appellate courts are divided as to when a nonpayment may be maintained against a month-to-month tenant. In the First Department, the Appellate Term has held that absent an explicit contractual agreement there is "no agreed rental amount for any month ensuing after [a month-to-month] tenant [has] ceased paying rent" (West 152nd Assoc., LP v Gassama, 65 Misc 3d 155 [App Term, 1st Dept 2019], citing Krantz & Phillips, LLP v Sedaghati, 2003 NY Slip Op 50032[U] [App Term, 1st Dept 2003] ["Even assuming that a month-to-month tenancy was created following expiration of the lease, there was no agreed upon rental for any month ensuing after tenant ceased paying rent and no basis for holding tenant contractually liable for the rent reserved in the expired lease."]; see also Mendez v Hidalgo, 2023 NY Slip Op 23390 [Civ Ct, NY Co 2023]; ZB Prospect v Olenick, 2023 NY Slip Op 23115 [Civ Ct, Kings Co 2023] ["In other words, while there may have been an agreed upon rental amount so long as the tenant paid rent and the landlord accepted it, the tenant's failure to pay rent meant that there was no longer an agreement."]).
In the Second Department, the Appellate Term for the 9th and 10th Judicial Districts has concluded that a nonpayment is permissible against a monthly tenant for any month he does not pay based on a landlord's right under RPL 232-c to "elect to hold a month-to-month tenant for a new term solely by virtue of his holding over" (Tricarichi v Moran, 959 NYS2d 372 [App Term, 2d Dept, 9th & 10th Jud Dists 2012]; see also Priegue v Paulus, 988 NYS2d 525 [App Term, 2d Dept, 9th & 10th Jud Dists 2014] ["Since the written lease had expired, a month-to-month tenancy on the same terms as those in the original lease is implied, inasmuch as tenants remained in possession after the expiration of the lease and continued to pay rent."]). In other words, as the Tricarichi court sees it, a month-to-month tenancy functions as an auto-renewing contract of indefinite duration for any months the tenant remains in occupancy.
Where there are conflicting Appellate Term precedents, a lower court is generally obligated to follow the decisions within its own judicial department (see People v Pena, 36 NY3d 978 at fn4 [2020] [Wilson, J. dissenting]). As this court sits in the Second Department, this would mean affording the holdings in Tricarichi and Priegue binding weight. However, because those decisions were rendered by a panel that hears appeals from the 9th and 10th Judicial Districts, jurisdictions outside of New York City, as opposed to appeals heard by the 2d, 11th and 13th Judicial Districts, the appellate court of direct appeal for cases in Queens County where this court sits (see 22 NYCRR Part 730, § 730.1(b)(1)), these decisions are arguably only entitled to great deference (see People v Gundarev, 901 NYS2d 909 [Crim Ct, Kings Co 2009]). Moreover, in finding the existence of an implied agreement for any months a tenant remains in possession, the Tricarichi court relied in part on "the requirement of Real Property Law § 232-b—that both a landlord and a tenant wishing to terminate a month-to-month tenancy must give a [*3]month's notice" (id., 959 NYS2d at 374). RPL 232-b is inapplicable in New York City, where there is no obligation for a monthly tenant to give notice prior to vacatur (see RPL 232-a), making the First Department decisions more on point for lower courts considering the issue in New York City. Accordingly, this court concludes that the Appellate Term's holdings in the First Department relating to when a nonpayment may be commenced in the context of a month-to-month tenancy should be followed in Queens County until the Appellate Term for the 2d, 11th and 13th Judicial districts holds otherwise.[FN2]

Given the foregoing analysis, even assuming an ERAP payment on Respondent's behalf created a monthly tenancy, Petitioner cannot predicate a nonpayment solely on Respondent's remaining in occupancy without paying. Rather, to defeat Respondent's summary judgment motion, Petitioner must offer proof that there was a specific agreement to pay rent in effect in June 2023, the month when this proceeding was commenced.
Petitioner argues that Respondent's participation in ERAP created an enforceable rental agreement for the twelve-month period from April 2023 to April 2024, following the ERAP payment in April 2023. Petitioner cites to several trial court holdings concluding that an implied agreement can be inferred by virtue of the ERAP statute's prohibition on rental increases for twelve months after acceptance of assistance (L. 2021, c. 56, Part BB, Subpart A, §9(2)(d)(iii), as amended by L. 2021, c. 417, Part A, §5) and the "agreement" by the landlord "not to evict for reason of expired lease or holdover tenancy any household on behalf of whom rental assistance is received for 12 months after the first rental assistance payment is received" (L. 2021, c. 56, Part BB, Subpart A, §9(2)(d)(iv), as amended by L. 2021, c. 417, Part A, §5). These decisions reason that the statutory language is sufficiently definitive as to both duration and monthly payment amount so as to create a "kind of an agreement that is essentially a lease" (100 Realty Equities LLC v Tian, 78 Misc 3d 1233 [Civ Ct, NY Co 2023]), particularly given that to hold otherwise would potentially allow tenants to "live in their apartments for free for a year without the landlord having a remedy" (JSB Props. LLC v. Yershov, 77 Misc 3d 235 [Civ Ct, NY County 2022]).
Petitioner's proposed theory of an implied agreement pursuant to ERAP is not stated in the Petition and is at variance with the allegations therein, which allege the existence of a written lease. One of the necessary elements of a petition is to plead "the interest of the tenant and the facts upon which the proceeding is based" (Migliaccio v Childs, 118 NYS3d 915 [App Term, 2d [*4]Dept, 2d, 11th &13th Jud Dists 2019], citing RPAPL 741). The failure to plead an implied "ERAP agreement" in the Petition, which has not been amended, is a material omission, which precludes utilizing the argument to defeat Respondent's motion for summary judgment (see Zheng v Almagir, Index No. 318331/22 [Civ Ct, Queens Co January 26, 2024]; Aero Mgt. v Moghadasian, 160 NYS3d 741 [App Term, 2d Dept, 2d, 11th &13th Jud Dists 2022]; 582 Gates, LLC v Farmer, 199 NYS3d 807 [App Term, 2d Dept, 2d, 11th &13th Jud Dists 2019]).
Even were it to reach the issue, the court finds compelling the analysis in 417 E. Realty LLC v. Kejriwal, 80 Misc 3d 583 [Civ Ct, NY Co 2023]. In Kerjiwal, the Honorable Bacdayan concluded that nothing in the ERAP statute or governing program documents evinces an affirmative agreement on the part of the applicant to be prospectively bound for purposes of a 711(2) proceeding. The statute imposes unilateral obligations on a landlord who participates in the program by restricting rental increases and precluding the eviction of the household for twelve months from receipt of funds.[FN3]
While these requirements certainly benefit the tenant-applicant, it is more in the nature of a third party beneficiary and is not the equivalent of an agreement to pay rent, which requires a "meeting of the minds on a binding contract" (Rhee v Dahan, 457 NYS2d 684 [App Term, 1st Dept 1982]), citing Delicatessen v Shumacher, 52 NY2d 105, 109 [1981] ["[D]efiniteness as to material matters is of the very essence in contract law."]). Therefore, Petitioner's acceptance of ERAP did not create an implied agreement to pay rent that would authorize a nonpayment against Respondent.[FN4]

CONCLUSION
Respondent demonstrated a prima facie entitlement to summary judgment by submitting an affidavit denying the existence of a lease or other agreement for the period of rent sought in this nonpayment proceeding and by attaching a copy of the last expired lease. As the party opposing summary judgment, it was incumbent on Petitioner to lay bare its proof and demonstrate the existence of a triable issue of material fact. Petitioner's papers fail to do so, as the only arguments offered for an ongoing agreement are Respondent's holding over following the creation of a month-to-month tenancy, and Petitioner's acceptance of ERAP within the year preceding commencement, neither of which created a binding contract for any months after Respondent ceased paying rent.
Accordingly, Respondent's motion is granted, and the Petition is dismissed. This constitutes the decision and order of the court.
Dated: February 4, 2024
Queens, New York
Hon. Logan J. Schiff, J.H.C.

Footnotes

Footnote 1: Because in a month-to-month tenancy "each month is a new term for a new period, each a separate and new contract " (Bleecker St. Tenants Corp. v Bleeker Jones LLC, 65 AD3d 240 [1st Dept 2009], revd on other grounds 16 NY3d 272 [2011]), the curable default giving rise to a nonpayment can never be for more than the current month's rent due as of commencement (see Porcelli v. Donlin 1988 NY Lexis 893 [Civ Ct, Bronx Co 1988]; Early Holding Corp. v. Glicker, 199 Misc. 223 [App Term, 1st Dept 1951]; Pedicini v D&M Metal Specialties, 103 NYS2d 172 [App Term, 1st Dept 1950] ["[D]ispossession for nonpayment of rent [can] only be had for nonpayment of any rent which became due under the monthly tenancy [and] when the landlord elect[s] to renew the monthly tenancy at the beginning of any month it [can] not dispossess for nonpayment for the prior month "], citing Printerion Realty Corp. v Fischer-Partelow, Inc., 4 NYS2d 153 [App Term, 1st Dept 1938]).
Footnote 2: It is possible that the 2d, 11th & 13th Judicial Districts have already aligned themselves with the First Department. In Shepard-Neely, 182 NYS3d 486 [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2022], the Appellate Term noted that an ongoing monthly rental agreement was not created where a landlord accepted DSS shelter payments after expiration of the parties' lease, leading at least one court to conclude that "Shepard-Neely brings the Appellate Term for the Second, Eleventh, and Thirteenth Judicial Districts into accord with the First Department" (ZB Prospect v Olenick, 2023 NY Slip Op 23115 [Civ Ct, Kings Co 2023]). Yet, in a prior appeal involving the same parties the Appellate Term concluded that "[a] rent-stabilized tenancy cannot be monthly because the respective rights and responsibilities of a landlord and tenant under a month-to-month tenancy cannot be reconciled with the respective rights and responsibilities of a landlord and tenant of a rent-stabilized apartment" (Fairfield Beach 9th, LLC v Shepard-Neely, 159 NYS3d 799 [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2021]), leaving some uncertainty as to whether the subsequent holding is limited to the rent-stabilized context.
Footnote 3: Notably, the statute does not bar commencement of a lease expiration holdover proceeding, only execution of the warrant of eviction (see Kerjiwal, 80 Misc 3d at 591). Nor is the landlord barred from seeking a judgment for use and occupancy upon prevailing in a holdover, commencing a plenary action for any unpaid rent, or possibly bringing an ejectment action, which is a common law equitable remedy with more flexible parameters than a summary proceeding.

Footnote 4: Even if the court were to find that acceptance of ERAP created an implied agreement, the parties' undisputed last lease was for $2,430 per month, and Petitioner is seeking rent at $3,000, seemingly based on a renewal lease offer that was never accepted, another fatal defect in Petitioner's papers. Petitioner was not entitled to simply deem its last renewal offer (see RPL 232-c; Samson Mgt. LLC v Hubert, 92 AD3d 932 [2d Dept 2012]).